May it please the court, my name is Robert Lyons. I'm appearing on behalf of the United States and the government of the Virgin Islands. I would like to request three minutes of my time for rebuttal. I will, just as a brief aside, as a matter of candor and with some trepidation, I will note that since Tomko was mentioned, I was the government appellate attorney at Tomko as well, so I hope you won't hold that against me. This is the third time this case has been before your honors. Judge Roth, you were on the earlier two cases. This particular appeal is an appeal from pre-trial orders dismissing money laundering and related counts for failure to state an offense. In dismissing the money to quote something which is obtained in exchange for the sale of something else, as in most typically when one sells a good in exchange for money. It's the government's position that the district court erred in limiting the definition of proceeds to sales transactions. We would cite to the court's morality decision as one example of the word proceeds having a more expansive definition than applied by the district court in morality. Could we perhaps start out, if you would, by explaining to us why we shouldn't avoid a circuit split and follow the Eleventh Circuit's reasoning in connecting such a thing? A couple reasons. One, I would, with respect to the Eleventh Circuit, suggest that its contents contain the analysis that we are asking this court to apply. Pretty sparse. It is. In fairness to the Eleventh Circuit, the case was mostly about the defendant's appeal. The government's appeal was the tail on the dog. It did not receive much attention. It was discussed at the very end of the opinion after the discussion of all the appellants. Also, in fairness to the Eleventh Circuit, the government didn't bring the Pasquotino case to the Eleventh Circuit's attention until I brought that to government's and council's attention in that case. So the Pasquotino case and some of the other cases came belatedly to the Eleventh Circuit, and again, in fairness to them, it was one of many issues. In contrast, this is the single issue in the government's appeal, and it is in the prime spot for a decision. So, yes, a decision in favor of the government would create, it appears, and I can't say this for sure, it appears it would create a circuit split. There are some other issues, immigration issues, in that other case, so I can't say for sure that a ruling in favor of the government in this case would create a clear split. The immigration issues, however, did not figure into the Eleventh Circuit's reasoning with respect to this issue before the end of the opinion period? In order for the government to have prevailed in the Eleventh Circuit, both its immigration issue and its tax issue would have to have been legally correct. So, you know, the court could, you know, we could be correct on the tax issue that was before the Eleventh Circuit and incorrect as to the immigration issue, and, you know, but again, I don't want to get too bogged down with the fact that, you know, we may in fact be asking the court, we are in fact asking the court to rule for the government, but I mean as far as whether it ends up creating a split with the Eleventh Circuit. Going back to the initial question, what the Eleventh Circuit did, what the district court in this case did, was merely parrot the Mali district court's statement as to what the authority, but the court just said it typically means a sales transaction. And we would point to, among other things, this court's decision in Morelli where the court, in citing the Black's Law Dictionary, says proceeds are that which results, proceeds or accrues from some possession or transaction. And it's the government's position that, and we also cite another dictionary definition in our brief, it's the government's position that that definition would allow the revenue that was the subject of the mail fraud to constitute the proceeds of mail fraud and thus for the indictment to properly state a money laundering offense. I think it's clear that the money, you know, how, why the definition, the term proceeds can be expanded, I'm not sure, but it's certainly more expansive than the definition given to it by the district court. We are asking this court, citing various dictionaries in this court's own opinion, to say that it includes that which results or proceeds or accrues. And it's the government's position that the defendants, and I'll use the words alleged because we're still pre-trial, alleged mailing of fraudulent Virgin Islands gross receipt tax returns to the Virgin Islands government, which underlies the mail fraud counts. When they took the money, the revenue from that, and sent it abroad to Jordan, that was the transportation, the proceeds of the mail fraud. On that point, I think it's important for the court to note the type of taxes that are at issue here, similar to the taxes that were in Morelli, in that what we have is a transaction-based tax where the tax accrues is imposed upon the transaction. In this case, should it matter for our purposes, that is for definitional purposes of proceeds, that the monies or funds that are at issue here were originally procured through lawful activity? No, I don't think that undermines the government's position. I mean, let me step back. The district court didn't dismiss the money laundering counts, and the defendants don't challenge that, and they're challenged to the money laundering counts. And as Pasquotino indicates, they are money laundering counts based on the taxes that were never paid. So what we have here really is a retention of monies that were initially obtained through lawful means, right? But effectively a conversion that occurs by virtue of a certain portion of those monies never remitted as taxes. Do I have it right? If the defendants had paid the taxes, filed fraudulent amended returns, got those taxes back, and then sent it abroad, I think it's very easy to see that those are the proceeds of the fraudulent amended returns. The only hiccup is they never sent the taxes to the government in the first place. That's why the government cites and says the rationale of Pasquotino is relevant to this case, because Pasquotino stated that there's no material difference between not paying taxes and embezzling money from the treasury. So we're saying that the hiccup of the fact that this was not obtained from getting a refund from the government, but retained and then sent abroad, is not a factual distinction that makes the government's money laundering charges insufficient. And I would like to save my time for rebuttal if I may. Thank you. Good morning. May it please the Court. My name is Gordon Ray. I represent Appalese for purposes of this appeal. Your Honors, we do believe that if you rule against Judge Finch, there will be a direct split in the circuits. The Mollie-Cannini— You've written a lot of circuit splits lately. Well, I know there are, but I know that was one of your first questions. Mollie-Cannini dealt directly with the question of what are proceeds in a context where false tax returns are sent in, and that's the SUA, the unlawful act, and whether or not that triggers the provisions of the money laundering statute. And the Eleventh Circuit squarely held it does not. It reached its conclusion first by looking at the Mollie District Court opinion and then doing an analysis of its own, citing Black's Dictionary, citing Oxford English Dictionary, which I noticed counsel disagrees with, and he cites Random House. By the way, we did do a look at what dictionaries the Third Circuit has used to interpret words in federal statutes over the last 15 years, and I'm told by one of my associates that it's almost universally Black's and Oxford's, the one that the Eleventh Circuit uses. The Random House Dictionary, relied upon by the government, I believe, was used in only one case and then in a long string cite. Rather than have a battle of dictionaries, though, I'd simply point out that the definition, the reading of the Mollie-Cannini case, not only is supported by what those cases cite, but also is supported by reason. You're not urging upon us the adoption of an official Third Circuit dictionary. I'm not, Judge. We can add that as an agenda item for our next retreat, I suppose. It would be fascinating. I'd be glad to share with you the research we did on that, but I simply point that out in passing. Policy issue. Here we have a legitimate business that earns income, proceeds. Accepting what the government says is true in its indictment, as we must at this stage, the principals in the business decide that they want to skim, have a tax skim, hide some of the income that they have legitimately earned. They send some overseas. They then file tax returns. Those tax returns do not report all of their income. The filing of the fraudulent tax return is the mail fraud count. And mail fraud, as you know, is one of the acts that can trigger the money laundering statute. However, the money laundering statute says that there have to be proceeds from a mail fraud. And in this case, the mail fraud generates no proceeds. There's no money. There's nothing that comes to these people. As a matter of fact, whether or not they even file a tax return, their tax liability always remains the same. There are simply no proceeds. Mawley could find one. Kanani could find none. And we can find none either. Do any of the definitions of proceeds suggest that that noun is derivative of the verb proceed, which suggests some kind of movement or transference? Well, the concept, I believe, that underlines Mawley, Kanani, and Judge Finch's reading of those cases would imply that. Again, I'd have to go back and parse those dictionary definitions again. The – what is – as I understand it, if there is a tax liability to an owing, that is a liability. It's an intangible. It doesn't adhere in property. The government cites a series of bankruptcy cases. In those cases, there are bankruptcy assets that are being hidden or concealed or being sold. And then those funds are being hidden and concealed. Are you suggesting that it should matter that these tax savings are, as you characterize them, an intangible? Yes, it definitely matters. Is there anything in Kanani that suggests that? Calling them tax savings to me seems like a litigation psychological ploy to make it seem to us that you are talking about something a lot more innocuous than what actually happened. I'm using the words that Kanani and Mawley used. And I'm not trying to minimize the seriousness of it. But wait a minute. Does anything in Kanani suggest some importance to whether or not tax savings – the tax savings at issue there were tangible or intangible? I don't remember that distinction being made. I would put it this way, Your Honor. The duty to pay the tax runs to the taxpayer. If the taxpayer has a duty to pay that tax, the fact that there is a tax doing owing does not say what monies that those taxes must be paid out of. The government, in order to establish a money laundering charge, has to show that the money that was sent overseas was the money that the taxes had to be paid from because it must be the proceeds of the mail fraud. We do not know, and there's no way to know because it's an intangible right, whether or not the taxpayer would have chosen to pay their taxes out of those funds, out of funds in their operating accounts, out of some other funds. There is nothing that's created. But in a skimming scheme, you skim the money off the top. You take certain specific money and you don't report it. You put it in a safe. You then, through various means, send it to other locations under different legal systems so that you can accumulate it in form to send even further away. And so in a skimming scheme, there are in fact specific funds that are due to be reported as tax and part of which to be paid as tax, which you are picking up and moving elsewhere. And that is different, I think, from an income tax fraud where you, at the end of the year, misreport your whole income. But the argument you're making here I don't think fits a skimming scheme where you're actually taking the money off the top, not reporting it, moving it elsewhere. Your Honor, with all due respect, that's exactly what happened here. These people are charged with having taken money off the top from their grocery store, not reported it, sent it abroad. Straight skimming. Exactly what happened in Kanani and Mali except that there the skimmed money was used to pay illegal workers apparently. Again, it was – what was hidden was the proceeds of the legitimate grocery store. What was not hidden was any tax liability in the sense that the – any taxes due and owing are owed by the share – by the taxpayer. But there is no earmarked funds that are the proceeds of any – of the act of filing a false tax return. But there are earmarked funds that should have been reported that have been skimmed off the top and removed elsewhere. But it's not money laundering unless the ones that are skimmed off the top and removed elsewhere are the proceeds of the mail fraud. And the mail fraud was the act of sending in an incorrect tax form. The consequence of this, Your Honor, would be that any guard variety skimming would suddenly become not just a tax fraud case but would become a money laundering case with the potential for draconian penalties. We found it interesting that the only cases reported in American jurisprudence in which the government has charged a tax fraud case this way is ours and the Kanani case, both of which involved Arab-Americans immediately after 9-11. There are no other cases out there in American jurisprudence that we could find where this kind of piling on of non-tax cases was used in a skimming context. And the consequences of reading – and again, the rule of lenity that we talk about – the consequences of reading proceeds of a mail fraud that involves a tax return in this factual context would be dramatic. It would rewrite the tax code. It would basically say that whenever somebody skims and sends in a false tax return not reporting money that they had skimmed and then hides some funds so that they can't be found, they're looking at money laundering, they're looking at mail fraud. And the money laundering then triggers all of the additional penalties of losing their property, etc. And so it's a dramatic, dramatic step. You only see it in those two cases. And the only other case like this that exists, Kanani and Mali say no. We cannot interpret that word proceeds that way. Well, what if, as Judge Smith proposed, you reported it all, you sent it all in, you then fraudulently made a claim for refund and got some of it back? That, I would have to agree, would be a much better case for the government. But it's the same case. There's no proceed that came to these people. All of the money that they sent overseas were the proceeds of the legitimate business. There is – that's what it was. They were at one point the proceeds of the legitimate business. Right. They then were the proceeds of the skim. Well, no, they were already – no, the skim did not reduce the tax liability of the taxpayer. Yes, it did because those skim funds weren't reported. Well, the taxpayer was trying to avoid a tax liability that existed. But the proceeds that we're talking about, the funds that were generated, that were created, were not created or generated by the mailing of a fraudulent tax form. Judge Smith asked an interesting question that I've just been pondering here that I don't think has been adequately responded to. And I think the thrust of it was that we're not talking about the proceeds of a legitimate grocery business. We're talking about the proceeds of an illegal conversion of a portion of those funds by the defendants and the transportation of that out of the country. How do you respond to that? Well, no specific money – there's no way to identify a piece of money that represents what the defendants – what the defendants – well, there's no money that's segregated for the payment of taxes. There's no way to say that the money that the defendants sent overseas that was – they had earned in their business was money that was a product or a proceed of the mailing in of the wrongful or fraudulent tax return. It simply didn't result from it. Now, the taxpayer obviously has a tax law available, and the taxpayer has a lot to answer for. But we're asking here whether or not that – what happened could be a proceed of a mail fraud such as to trigger the consequences under the money laundering statute. It's straight statutory interpretation. The word proceeds is a term of art. It's been interpreted by a sister circuit in some detail with analysis. And we would ask you to follow it, and we would ask you to affirm the decision of Judge Finch that is totally in accordance with Kennedy, Malley, and with the common sense meaning of proceeds. Thank you, and we'll have Mr. Lane. Thank you. Mr. Butler. Your Honors, I'm going to get to the – many of the arguments that he made. The first one I wanted to state, though, is the 11th Circuit created the conflict because 2nd Circuit and Trepillo, Miller – that's a district court case – and Fontaine, which we all cite in our brief, are all Pasquotino-like cases where the government charged money laundering in the context of taxes not paid in smuggling cases, an excise tax due to the government of Canada and also to the United States. So the government's not asking this court to create a conflict, per se, because the 11th Circuit has already ruled contrary to the 2nd Circuit in its decision. We're only asking you, really, to join the 2nd Circuit in adopting our interpretation of the word proceeds. Also, with regard to their policy-based argument, I think that was somewhat addressed, I believe, in the Conley case where the court held that at what point do you create proceeds? And the court ruled in this gambling case that once a certain portion of the acts generate the offense, taking the money out – or having the gambling machine was the offense itself. And taking the money out and using – of the machines constituted money laundering. And what the court said – and the reason I'm bringing that case up is the court was concerned about having an overexpansive definition or use of money laundering. The court said, well, that doesn't happen because the statute requires the requisite mens rea. And so the government's going to have to prove, and we're prepared to prove, that they transported these funds abroad with the requisite intent to hide what they did. So we're not – they're concerned that the government is going to take a run-of-the-mill Title 26 case and run amok with money laundering cases. It's not going to happen. First, you have this institutional restraint in that we probably won't do that in income tax cases because you don't know until April 15th whether a tax is due. These type of taxes, with each sale of a tomato, the 4% tax was imposed. It was due and payable a month later with the return. If you take all the money that they skim, send it to Jordan with the requisite intent, 4% of those funds was the Virgin Islands gross receipts tax. That's the money laundering aspect of it. The government's going to have a burden to prove that some of the monies that went abroad were the proceeds of mail fraud. But, as we say in one of the footnotes of our brief, we don't have to do this particular tracing. We just have to show that that occurred. Plus, we're a pretrial motion to dismiss for failure to state an offense. So some of their arguments are evidentiary-based arguments that we will combat at trial with evidence. Our government's position is that the offense, the money launderer account stayed an offense when the definition of proceeds is as we urge. Unless the court has any questions, we'll wrestle in our briefs. Thank you very much. Thank you, counsel. It's a well-argued case. It presents a very interesting discrete issue here. We'll take it under advisement. And I think we'll also declare a recess at this time. I don't know that we have counsel yet on our last case for the day. So we will take a recess and await the hopeful arrival of counsel.